IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA D. SIMS, | ) | CASE NO. 1:07 CV 1663 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Cynthia D. Sims, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, decided that Sims had severe impairments consisting of diabetes mellitus, status post-vaginal and abdominal hysterectomy with infection, depression (not otherwise specified), and anxiety (not otherwise specified).[1] The ALJ determined that Sims did not have an impairment or combination of impairments meeting or equaling one listed in Appendix 1 of the regulations.[2] The ALJ made the following residual functional capacity finding:

---

[1] Transcript ("Tr.") at 13.

[2] *Id.* at 14.

> [T]he claimant has the residual functional capacity to perform work at the light level of exertion. Specifically, she can lift/carry 20 pounds occasionally and 10 pounds frequently. She should only have minimal interaction with the public and coworkers. She should not be around unprotected heights. She should not be around moving machinery or hazards. Lastly, she is limited to simple repetitive tasks.[3]

Given that residual functional capacity, the ALJ found Sims incapable of performing her past relevant work.[4]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Sims could perform.[5] The ALJ, therefore, found Sims not under a disability.[6]

Sims asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Sims asserts eight errors that she claims require the reversal of the Commissioner's decision:

1. The ALJ erred in finding that the Plaintiff's impairment(s) did not meet and/or medically equal the Listing of Impairments; at the hearing level the issue of medical equivalence needs to be addressed by a physician designated by the Commissioner of Social Security (20 C.F.R. §§ 404.1526(c) and 416.926(c)), especially given the Plaintiff's date last insured of March 31, 2005.

---

[3] *Id.*

[4] *Id.* at 19.

[5] *Id.* at 19-20.

[6] *Id.* at 20.

-2-

2. The ALJ erred in not crediting the opinions of the Plaintiff's treating sources, not giving those opinions controlling weight, failing to give "good reasons" for rejecting their opinions, and substituting his own non-medical opinion for that of the treating source. The ALJ contravened the provisions of SSR 96-2p, SSR 96-5p and applicable regulations and case law.

3. Per SSR 96-6p, the ALJ erred in failing to accept or reject with explanation some important mental limitations set forth by two State Agency psychologists to whose opinion the ALJ gave "great weight."

4. The ALJ erred in denying the Plaintiff benefits in reliance upon VE testimony that was given in response to a hypothetical question that did not include all of the Plaintiff's limitations; the ALJ is precluded from relying upon the VE's testimony as the jobs enumerated by the VE are inconsistent with the ALJ's RFC findings and hypothetical.

5. The ALJ erred in not crediting the opinions of physical therapist David Edelstein in determining the Plaintiff's physical RFC in violation of SSR 06-3p.

6. The ALJ erred in failing to make a specific and thorough credibility determination with regard to the Plaintiff's allegations of non-exertional symptoms, as required by law and SSR96-7p.

7. The ALJ erred in failing to consider the Plaintiff's obesity in his sequential evaluation of the Plaintiff's case as required by SSR 02-1p.

8. The ALJ erred in violating SSR 00-4p in that he failed to ask the VE if his testimony was consistent with the DOT (including its companion publication, the SCO) and for a reasonable explanation for the conflict if inconsistent. The ALJ's statement to the VE at the hearing, prior to taking his testimony, that "unless you say otherwise here this morning, I'll assume your testimony's consistent with the Dictionary of Occupational Titles" does not comport with the ALJ's affirmative obligations under SSR 00-4p.

I conclude that substantial evidence supports the ALJ's finding that Sims's impairments do not meet or equal a listing in Appendix 1 of the regulations but that substantial evidence does not support the ALJ's residual functional capacity finding. I will

recommend, therefore, the remand of this case for reconsideration of the residual functional capacity finding and for reconsideration of the finding at step five that a significant number of jobs exist locally and nationally that Sims could perform.

## Analysis

### 1. Introduction

In determining whether Sims qualified to receive the disability insurance and supplemental security income, the ALJ used[7] a five-step sequential evaluation process consisting of the following inquiries:

1)  A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2)  A claimant who does not have a severe impairment will not be found to be disabled.

3)  A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4)  A claimant who can perform work that he has done in the past will not be found to be disabled.

5)  If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[8]

---

[7] *Id.* at 12-13.

[8] *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).

In her eight assignments of error, Sims challenges the findings of the ALJ at steps three, four, and five. I will, therefore, discuss each assignment in connection with the step or steps to which that assignment applies.[9] This Court's standard of review is the deferential one of substantial evidence.[10] Under this standard, "[s]ubstantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[11] The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.  Step three – meeting or equaling a listing**

At step three Sims challenges the ALJ's finding that she did not meet or equal a listing in Appendix 1 of the regulations (Issue # 1). Essential to her position with regard to this step is her attack on the weight give to the opinion of her treating, primary care physician, Leanne Chrisman-Khawam, M.D., by the ALJ (Issue # 2).

The listing at issue is § 12.04 for affective disorders/depressive syndrome. To meet or equal this listing, the claimant's impairment must satisfy at least four of nine "A" criteria and at least two of four "B" criteria. The nine "A" criteria are:

---

[9] Some assignments implicate the ALJ's findings at more than one step. I will endeavor, however, to discuss each assignment where Sims claims it first impacted the sequential evaluation process and then briefly discuss my resolution of the assignment as pertinent to my analysis of later steps.

[10] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[11] *Id.* at 722 (citations omitted).

-5-

Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

    a. Anhedonia or pervasive loss of interest in almost all activities; or

    b. Appetite disturbance with change in weight; or

    c. Sleep disturbance; or

    d. Psychomotor agitation or retardation; or

    e. Decreased energy; or

    f. Feelings of guilt or worthlessness; or

    g. Difficulty concentrating or thinking; or

    h. Thoughts of suicide; or

    i. Hallucinations, delusions, or paranoid thinking;

The four "B" criteria consist of:

Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4, Repeated episodes of decompensation, each of extended duration;

Sims argues that the record overwhelmingly supports the existence of at least six "A" criteria. From my review of the administrative record, I have identified conflicting

evidence[12] as to all but three of the "A" criteria – psychomotor retardation,[13] feelings of guilt or worthlessness,[14] and difficulties with concentration.[15]

The critical dispute at step three, however, involves the "B" criteria. As counsel for Sims stated at the oral argument, the evidence she relies on to support the "B" criteria consists of the evaluation done by her treating physician, Dr. Chrisman-Khawam, in August of 2006, in which she opined that Sims had marked limitations in her abilities to relate to people and pursue daily activities and severe limitations in her abilities to perform activities within a schedule.[16] Sims maintains that this evaluation supports the existence of at least three of the four "B" criteria.

The ALJ discounted Dr. Chrisman-Khawam's opinion and decided not to give it great weight.[17] As reasons, he gave three – Dr. Chrisman-Khawam is a family practitioner and not a psychiatrist or psychologist, her records do not show that she did a psychological evaluation or order a psychological consultation, and she did not document the duration of Sims's psychological symptoms.[18]

---

[12] Tr. at 235 (good appetite), 236 ("likes to mess around with the computer," "she loves to sing"), and 238 ("occasionally has difficulty falling asleep").

[13] *Id.* at 235, 238, 322.

[14] *Id.* at 154, 235.

[15] *Id.* at 238, 254.

[16] *Id.* at 356.

[17] *Id.* at 17.

[18] *Id.*

-7-

Although Sims takes issue with whether this articulation has the support of substantial evidence in the administrative record, I conclude that is does.  Dr. Chrisman-Khawam does not have a specialty in psychiatry or psychology, and this deficiency is relevant under the regulations.[19]  Further her treatment notes do not support the extreme mental limitations opined in her report.  According to my review of those notes, she treated Sims from January of 2005[20] until December of 2005.[21]  During that year the notes document six office visits[22] and two no shows.[23]  The primary focus of Dr. Chrisman-Khawam's treatment appears to be diabetes related, although depression is referenced on three of the six visits.  The notes for only one of the visits contain what might be considered clinical observations of Sims, the visit of August 16, 2005.[24]  Although Sims had three visits with this doctor thereafter, the notes of those visits contain little if any references to depression.[25]  Dr. Chrisman-Khawam made her written mental assessment in August of 2006, some eight months after the last documented office visit.[26]  Given these circumstances, a reasonable person could conclude that Dr. Chrisman-Khawam's evaluation was properly discounted.

---

[19] 20 C.F.R. § 416.927(d)(5).

[20] Tr. at 263.

[21] *Id.* at 321.

[22] *Id.* at 263, 270, 276, 321, 322, and 323.

[23] *Id.* at 260, 321.

[24] *Id.* at 270.

[25] *Id.* at 321-23.

[26] *Id.* at 356.

The ALJ did give great weight to the evaluation of the consulting, examining psychologist, Richard Halas.[27]  He assessed Sims as having only moderate limitations.[28]  This assessment does not support the position that Sims met or equaled the "B" criteria of Listing § 12.04.  This is evidence that a reasonable person could accept to support the ALJ's finding that Sims was not disabled at step three.

**3.     Step 4 – the residual functional capacity finding**

Sims contests the ALJ's finding at step four of the sequential evaluation process as to her residual functional capacity.  As set out above, the ALJ found her capable of light work with the non-exertional limitations of minimal interaction with the public and co-workers and to simple repetitive tasks.[29]  Sims argues that the ALJ failed to include in the finding additional mental limitations supported by the evaluation of the consulting psychologist and the state agency reviewing psychologist (Issue # 3), did not properly consider the opinion of the occupational therapist (Issue # 5), improperly evaluated Sims' credibility (Issue # 6), and failed to consider the effects of obesity on her residual functional capacity as required by the agency's ruling (Issue # 7).

After careful review of the administrative record, I concur that the ALJ did not properly include in the residual functional capacity finding additional mental limitations identified by medical sources whose opinions he assigned great weight, which will require

---

[27] *Id.* at 17.

[28] *Id.* at 237.

[29] *Id.* at 14.

a remand. Sims's challenge with respect to the ALJ's treatment of Halas's opinion is that, although he assigned this opinion great weight, he ignored his opinion that "symptoms of depression and anxiety are likely to become exacerbated if she is placed in a setting that is stressful, fast-paced, or demanding.[30] This limitation was picked up by the state agency reviewing psychologist, Karen Stailey, who opined "she is capable of concentrating and persisting on work tasks if setting does not have strict time or production demands."[31] The ALJ also gave this opinion great weight.[32] The ALJ ignored these opinions, which he assigned great weight, in that the residual functional capacity finding does not have any provision for work limitations as to stress or strict time or production demands. I see no articulation in the ALJ's decision as to why these limitations should not have been included in the finding and no basis in the record for excluding them. I characterize this limitation as set out by Halas and Stailey as simple repetitive tasks plus, the plus referring to some restriction as to no production quotas or some reference to stress. Counsel for the Commissioner conceded at the oral argument that none of the jobs identified by the vocational expert in his testimony, on the face of this record, would provide for simple and repetitive plus. Upon review of the transcript of the vocational expert's testimony, it would

---

[30] *Id.* at 237.

[31] *Id.* at 247.

[32] *Id.* at 17.

-10-

appear that this is correct, in that all the jobs identified involved assembly or inspection.[33] In any event, this can and should be clarified on remand.[34]

Depending on the outcome of the reconsideration of the residual functional capacity finding on remand, the other step four issues may or may not be resolved.  As guidance, the following observations are offered.  First as to Issue # 5 involving the opinion of the occupational therapist, such a therapist is not a medical source under the regulations, and his opinion, although it may be considered along with other objective medical evidence, need not be given weight.[35]  Here it appears that the therapist saw Sims once and had no treating relationship with her.  The preferable source regarding exertional limitations is Dr. Kelly, a physical medicine and rehabilitation specialist, whose opinion the ALJ gave great weight.[36]

Regarding credibility, the subject of Issue # 6, after reconsideration of the residual functional capacity finding the ALJ should articulate in a unified statement the reasons

---

[33] *Id.* at 387-89.

[34] Also at issue is Dr. Clay Kelly's opinion, which goes to essentially exertional limitations and ability to work a full day.  He opines that she is capable of working a minimum of 20 hours a week. *Id.* at 359-60. The ALJ's residual functional capacity finding contemplates 40 hours a week.  Sims argues that this opinion, which the ALJ assigned great weight (*Id.* at 18-19), does not support her ability for full-time work.  In the alternative, she argues that the ALJ should have recontacted Dr. Kelly to clarify whether Sims was capable of full-time work.  Because a limited remand is in order here given the ALJ's failure to incorporate limitations identified by Halas and the Stailey, it is appropriate to include in that remand the recontacting of Dr. Kelly on full-time work.

[35] 20 C.F.R. § 416.927(d)(2)(i); *Hensley v. Comm'r of Soc. Sec.*, 214 F. App'x 547, 551 (6th Cir. 2007).

[36] Tr. at 18-19.  See footnote 28.

supporting his finding.[37] If the ALJ continues to assign great weight to the opinions of Halas, Stailey, and Dr. Clay, he should incorporate the limitations supported by those opinions into the credibility assessment.

Finally, as to Issue # 7, I find no defect with the ALJ's methodology in considering obesity. Social Security Ruling 02-01p requires review to determine if the combined effects of obesity with other impairments can be greater than each of the impairments considered separately.[38] Here the ALJ identified impairments caused or exacerbated by obesity – diabetes mellitus, depression, and the after effects of obstetric surgery.[39] The evaluations of Halas, Stailey, and Dr. Kelly extensively considered the limitations caused by these impairments, and I can see no further overlay of limitations not considered by the ALJ. With proper reconsideration of the residual functional capacity finding as discussed above, the effects of Sims's obesity should be properly accounted for consistent with SSR 02-01p.

**4.     Step 5 – the existence of a significant number of jobs locally or nationally that Sims could perform**

The limited remand recommended herein probably will require the ALJ to reconsider at step 5 whether a significant number of jobs exist locally or nationally that Sims could perform. As guidance, I will comment on her last issue (# 8) involving inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles.

---

[37] For standards that should govern this finding and the articulation thereof, see *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732-33 (N.D. Ohio 2005).

[38] Social Security Ruling 02-01p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859-64 (Sept. 12, 2002).

[39] Tr. at 13.

Sims criticizes the form of the ALJ's inquiry as to possible inconsistencies between the expert's testimony and the DOT. The ALJ made the statement on the record "unless you say otherwise here this morning, I'll assume your testimony's consistent with the Dictionary of Occupational Titles."[40] The vocational expert then testified and identified no inconsistencies. Sims argues that the ALJ should have asked the expert if his testimony was consistent with the DOT and had the expert affirmatively answer on the record that no inconsistencies existed. This is form over substance. Although a question about inconsistencies and an answer on the record is the preferable practice, absent evidence of inconsistencies, what the ALJ did here will suffice.

This raises the second part of Sims's argument – that the limitation that the ALJ did adopt to simple repetitive work ruled out all of the jobs identified by the vocational expert under the DOT. This is so, Sims posits, because all of the jobs identified by the expert have a DOT GED rating of R2 or above, and simple repetitive work precludes any job with a GED rating above R1.

Although there is some authority supporting this position, the majority of cases reject such a bright line rule. The best explanation for rejecting such a rule is set forth in the decision in *Meissl v. Barnhart*, out of the Central District of California, wherein the court explained that simple routine tasks does not necessarily equate with the DOT's GED R1 rating that encompasses the ability to perform simple one or two-step instructions:

---

[40] *Id.* at 385.

A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.

Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also*, 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While

-14-

reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005) holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart,* 91 Fed. Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir. 2004) "Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

> The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001).[41]

---

[41] *Meissl v. Barnhart*, 403 F. Supp. 3d 981, 983-85 (C.D. Cal. 2005).

A number of courts, including two courts of appeals, have found on the facts presented compatibility between a limitation to simple repetitive tasks and a GED R2 rating.[42]

On remand, the ALJ and counsel for Sims will undoubtedly want to question the vocational expert about the compatibility between the various ratings in the DOT and the limitations included in the residual functional capacity finding.  I cannot recommend, however, the adoption of the position that, as a matter of law, a limitation to simple repetitive tasks cannot accommodate jobs with a DOT GED rating above R1.

## Conclusion

Based on the foregoing analysis, I recommend the reversal of the decision of the Commissioner denying Sims's applications for disability insurance benefits and supplemental security income and the remand of the decision for reconsideration of the residual functional capacity finding as to exertional and mental limitations and the issue of whether or not a substantial number of jobs exists locally and nationally that Sims could perform.

Dated:   August 19, 2008            s/ William H. Baughman, Jr.
                                                               United States Magistrate Judge

---

[42] *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (11th Cir. 2005); *Money v. Barnhart*, 91 F. App'x 210, 214-15 (3d Cir. 2004); *Adams v. Astrue*, No. CV07-1248, 2008 WL 2812835, *3 (W.D. La. June 30, 2008); *Cooper v. Barnhart*, No. 04-222-P-S, 2005 WL 1231496, *3 (D. Me. May 24, 2005).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.